MCSHAPIRO LAW GROUP P.C.
Chaya Gourarie
Jacob H. Nemon
Mitchell C. Shapiro
15 Cutter Mill Road, #207
Great Neck, New York 11021
(T) 212.444.9974
(F) 212.901.0921
(E) mcs@mcshapirolaw.com
*Attorneys for Plaintiff Maher*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

JOHN MAHER, individually and derivatively as a
Shareholder of DUCK FAT INC. D/B/A
EAT GASTROPUB,

                             Plaintiff,

        -against-

GEORGE CONFORTI, SCOTT RUSSELL
and DUCK FAT INC. D/B/A EAT GASTROPUB,

                            Defendants.
--------------------------------------------------------------X

_____CV_____

**VERIFIED COMPLAINT**

Plaintiff John Maher, individually and derivatively as a shareholder of Duck Fat Inc. (d/b/a EAT Gastropub) by his attorneys herein, MCSHAPIRO LAW GROUP P.C., as and for his Verified Complaint against Defendants, alleges as follows:

## NATURE OF ACTION

1. In this action, Plaintiff Maher seeks to protect his life's work, which is currently held hostage in a restaurant owned and operated by Defendant Duck Fat Inc. (d/b/a EAT Gastropub) (hereinafter the "Corporation"). The individual Defendants have improperly seized control of Plaintiff's restaurant, trade name and good will, which Plaintiff Maher developed over a 25 year career as a chef, caterer and restaurant owner/operator. Without

advanced warning, and thus in violation of both applicable state law and the Corporation's operating agreement, Defendants Conforti and Russell effectively expelled Plaintiff Maher from the restaurant that bears his logo and good will and from the Corporation (of which he was the President and a 33% owner).  Defendants did so maliciously and deceitfully, first telling Plaintiff Maher that they believed he should take a one month paid leave of absence, and then hours later, after he had left his copyrighted recipe books and other personalty at the restaurant, changing the locks and passwords and telling the restaurant staff that Plaintiff Maher had "moved on."   By doing so, Defendants have converted to their own use Plaintiffs' property, including Plaintiff's copyrighted recipe books, his cooking utensils, trademarks and logos, and his good will.

2.  Plaintiff Maher's life savings and life work were invested in developing the good will and trade names ("EAT" and "EAT Gastropub") that are now being held captive by the Defendants.  Having locked Plaintiff Maher out of the restaurant and business that was created around his vision, good will and trade names, the Defendants have deprived Plaintiff Maher of his reasonable expectation as their "partner" and a founder of the closely held Corporation. Plaintiff accordingly seeks judicial dissolution of the Corporation pursuant to BCL §1104-a.

3.  Plaintiff Maher seeks injunctive relief pursuant to 15 U.S.C. § 1116 to protect his intellectual property and his good will.  Plaintiff also seeks both compensatory and punitive damages against the individual Defendants, who have caused significant damage to Plaintiff's name and reputation and to the Corporation.

## PARTIES

4.  At all relevant times herein, Plaintiff John Maher was and is an individual residing at 127 Cedar Avenue Rockville Centre, NY 11570, within the County of Nassau.

5.      At all relevant times herein, Defendant George Conforti was and is an individual residing at 237 Seamen Ave., Rockville Centre, New York, 11570, within the County of Nassau.

6.      At all relevant times herein, Defendant Scott Russell was and is an individual residing at 2823 Long Beach Rd Oceanside, NY 11572, within the County of Nassau.

7.      At all relevant times herein, Defendant DUCK FAT INC. was a New York corporation in good standing, with its principal place of business at 2823 Long Beach Rd, Oceanside, NY 11572, in the County of Nassau, and doing business under the name "EAT Gastropub."

8.      At all relevant times herein, Plaintiff Maher and Defendants Conforti and Russell were equal shareholders in the Defendant Corporation.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action. This case arises under the United States Lanham (Trademark) Act, 15 U.S.C.A. § 1051 et seq. and the United States Copyright Act, 17 U.S.C. § 101 et seq.  Accordingly, this Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the additional causes of action, and related claims deriving from a common nucleus of operative facts and form part of same case or controversy as the federal causes of action.

10.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2).

11.     The Court has personal jurisdiction over Defendant Conforti, as he owns, directs, manages, or is associated with, several business enterprises in Nassau County, including the Defendant Corporation, and regularly does business in Nassau County, New York.

12.     The Court has personal jurisdiction over Defendant Russell, as he owns, directs, manages, or is associated with, several business enterprises in Nassau County, including the Defendant Corporation and the entity which owns the real property leased by the Corporation in Oceanside, New York, and regularly does business in Nassau County, New York.

13.     The Court has personal jurisdiction over the Defendant Corporation as it maintains its principal place of business in Oceanside, New York, in the County of Nassau.

## FACTUAL BACKGROUND

### *Plaintiff Maher's Training and Reputation*

14.     During the course of the past twenty-five years Plaintiff Maher has invested time, sweat and money into developing an excellent reputation as a chef.

15.     Beginning in or about 1990, Plaintiff Maher was first employed as a line cook at McQuades Restaurant in Rockville Centre, New York. In furtherance of his goal to become a master chef with a flavor and brand to call his own, Plaintiff Maher dedicated himself to receiving the highest level of training, including working for award winning chefs.

16.     In or about 1990, Plaintiff Maher joined a Hotel Management Program to enhance his skills as a chef.

17.     In or about 1992, Plaintiff Maher participated in a culinary apprenticeship for seven months at Disney World in Florida.

18.     Thereafter, Plaintiff Maher worked full-time in Tuscany Restaurant in Rockville Centre, New York as a line cook, pastry cook, sous chef and restaurant manager, for a total of approximately 5 years.

19.     In or about 1996, Plaintiff Maher enrolled in the Culinary Institute of America located in Hyde Park, New York. Plaintiff Maher completed the two year program and received a culinary arts degree.

20.     While earning his degree at the Culinary Institute of America, Plaintiff Maher continued working as a chef at Tuscany Restaurant during the weekends.  During that same time frame, Tuscany achieved a 3 star rating from New York Newsday and The New York Times.

21.     In recognition of his talent as a chef, Plaintiff Maher was offered a scholarship to remain in the Culinary Institute of America for a nine-month training program which specialized in baking and pastries. During his additional nine months at the Culinary Institute of America, Plaintiff Maher also earned a fellowship to work as an apprentice chef at Caterina Di Medici which is associated with the Culinary Institute of America in Hyde Park, New York. Plaintiff Maher continued working as a chef at Tuscany Restaurant during the weekends and holiday vacations.

22.     During the late 1990s, Plaintiff Maher also developed an interest in liquors and wines and worked toward, and then acquired, his sommelier certification. A sommelier is defined as a wine steward; a trained and knowledgeable wine professional, normally working in fine restaurants, who specializes in all aspects of wine service as well as wine and food pairing.

23.     Immediately after he completed his training at the Culinary Institute of America, including the nine-month program specializing in baking and pastries, and obtaining his sommelier certification, Plaintiff Maher proceeded to work in several restaurants under the tutelage of famous award-winning chefs.  Specifically, Plaintiff Maher worked in the Picholine Restaurant in Manhattan, New York with two James Beard award winning chefs, Terrance

Brennan and David Pasternack. Plaintiff Maher also worked in Park Avenue Café with award winning chef David Burke, at Le Cirque with Jacques Torres and at Gotham Pastry with Michael Hu, named Pastry Check of the Year in 1998.

### *Plaintiff Maher's Building of Good Will in the EAT Logo and Brand*

24.     In 2005, Plaintiff Maher decided that he had gained enough experience and was ready to venture out on his own. Plaintiff Maher opened a restaurant and catering business called EAT, located in Oceanside, New York.

25.     Plaintiff Maher developed the following logo to represent his brand (hereinafter the "EAT Logo"):



26.     Plaintiff Maher has used the name EAT and some variation of the EAT Logo in association with his cooking continuously since 2005.  His menus, emails, and recipe boards all featured this logo. The Oceanside EAT Restaurant and Catering business was successful. After some time, people in the cooking and catering community began associating the EAT Logo with Plaintiff Maher's expertise, brand, and goodwill.

27.     On or about 2009, the Oceanside EAT Restaurant was sold and then changed names.  Plaintiff Maher continued to offer catering services and continued to use the EAT Logo to represent his brand. Plaintiff Maher developed a customer and brand name around the EAT Logo and brand name.

28.     During the course of the past ten years, Plaintiff Maher invested time, sweat, and money into developing the EAT Logo as a recognizable brand name that was associated with his own name, expertise and good reputation.

### *Plaintiff Maher's Development and Control of His Copyrighted Recipe Books*

29.     During the course of the past ten years, Plaintiff Maher invested time, sweat, and money into developing recipes which represented the EAT mark and the goodwill associated with it.

30.     Plaintiff Maher compiled at least eight recipe books, containing over fifty original recipes, with detailed directions authored by himself (the "Recipe Books").

31.     The Recipe Books contain the EAT Logo inside, thereby indicating that they are associated with the EAT mark and with Plaintiff Maher.

32.     It is quite unusual for a chef to compile his own Recipe Books.  As such, the compilation of same was done beyond the scope of the Plaintiff's employment by the Corporation as a chef.

### *Plaintiff Maher's Development and Control of the EAT Gastropub Logo and Restaurant*

33.     In or about 2012, Plaintiff Maher and his then-long time friend, Defendant George Conforti, began discussing the possibility of opening a business together.

34.     Upon information and belief, Defendant Conforti had minimal business experience (but access to capital), and Plaintiff Maher had the expertise, brand, and customer base necessary to open up a successful restaurant.

35.     Plaintiff Maher and Defendant Conforti agreed to open a restaurant featuring the EAT logo and brand, with the understanding that the sole source of income for the new restaurant would be Plaintiff's cooking and the goodwill associated with his reputation.

36.     In or about January 2013, four individuals agreed to participate in a venture to open a restaurant.  To do so they incorporated the Corporation under the name Duck Fat Inc. (previously incorporated under the name Oceanside Grill and Restaurant Inc.).  Those four individuals were Plaintiff Maher, Defendants Conforti and Russell and a fourth person named John Fitzsimmons.

37.     Under the original corporate documents, John Fitzsimmons was to be a partner in the venture and an equal owner of the Corporation.  Ultimately, the Operating Agreement for the Corporation provided that John Fitzsimmons would be an employee, not an owner or partner, and that Plaintiff Maher and Defendants Conforti and Russell would each own a 1/3 share of the Corporation.

38.     Defendant Russell was the owner of real property located at 2823 Long Beach Rd, Oceanside, New York, 11572, a location that Plaintiff Maher and Defendant Conforti agreed was perfect for the Corporation's restaurant.  Defendant Russell lived in an apartment above the space at all relevant times.  Defendant Russell entered into an arrangement with the Corporation to provide it the space on a rent free basis, with the Corporation only responsible for payments due on a mortgage note and the taxes on the building (which total approximately $4,200 per month).  Upon information and belief, based upon the fact that the restaurant located next door, with no outside eating space, pays $23,000 per month in rent, market rent for a similar would be approximately $15,000 or more per month.

39.     Under the Operating Agreement, it was agreed that Defendant Conforti would have "overall management responsibilities," Defendant Russell would be in charge of "calculating food costs and labor costs and liquor costs," and Plaintiff Maher would be "in charge of day to day operations in the kitchen," among other things.

40.     Moreover it was agreed that in addition to being a shareholder and the President of the Corporation, Plaintiff Maher would be employed as the Corporation's chef and would receive a weekly salary for those services.

41.     Plaintiff Maher contributed $25,000 to the start-up costs of the Corporation. Upon information and belief, that $25,000 constituted his entire life's savings.

42.     Plaintiff agreed to allow the Corporation to use his Eat Logo, and designed a new variation of the logo (the "Eat Gastropub").

43.     When he executed the Operating Agreement and permitted the Corporation to use his brand name and the EAT Logo for the Corporation's restaurant, it was Plaintiff Maher's understanding and reasonable expectation, based on the terms discussed by the parties, that he would remain employed as the chef of that restaurant for so long as the business remained in existence.

44.     Based on the foregoing expectations, Plaintiff Maher designed and developed the EAT Gastropub Logo, as an extension of his own EAT mark, with the assistance of a marketing consultant, as follows:



45.     Plaintiff effectively licensed to the Defendant Corporation the use of his EAT Logo and the Eat Gastropub Logo, the trade names and his Recipe Books for so long as he was in control of the operations of the Defendant Corporation.

46.     At all times, Plaintiff controlled the use of the logos, trade names and copyrighted materials.

47.     The Corporation opened its restaurant in October 2014 under the name EAT Gastropub (the "EAT Gastropub Restaurant" or the "Restaurant"). The menus, plates, French fry cones, training manuals, and recipe booklets all featured Plaintiff's new EAT Gastropub Logo, representing Plaintiff Maher's brand.

48.     Through his own efforts, Plaintiff Managed to develop a following of 3,400 Facebook "friends" on the EAT Gastropub Facebook page (the "Facebook Page").

### *Plaintiff Maher's Efforts Make EAT Gastropub a Booming Success*

49.     Plaintiff Maher fulfilled all of the duties assigned to him under the Operating Agreement and also fulfilled some of the duties allocated to the Defendants herein.

50.     Included among Plaintiff's accomplishments were that he: (a) trained the kitchen staff for 3 weeks before the Restaurant opened and continuously trained them for the first 5 months of the restaurant's operations; (b) once the business opened, came in every morning at 8 am and stayed as late as 10, often working 10-14 hour days, beginning 7 days a week and then six days per week; (c) he delegated duties in the kitchen, training staff, wrote job descriptions, and compiled the employee's manual; (d) managed two kitchens, the main one upstairs and the pastry one downstairs; (e) was in charge of ordering supplies and developing the menu, including menu specials; (f) developed roughly 7 recipe books – one for each food station -- incorporating over 50 recipes in total, to ensure standardization and consistency; and (g) also managed the social media associated with EAT Gastropub, including the Facebook and Twitter accounts.

51.     The first six months of the new business were astoundingly successful.

52.     Plaintiff Maher developed a routine so the Restaurant's kitchen could run more efficiently and systemically, utilizing the separate Recipe Books that he developed on his

own for each station.  Through these efforts, the Corporation achieved 23% gross food cost for March 2015, a number almost unheard of in the restaurant industry.

53.     During that same period, the EAT Gastropub Restaurant received numerous favorable write-ups in newspapers and the internet.  Included among those was being featured in NY Newsday's Top 5 Restaurants of the Year in January 2015 and receiving 3 stars from NY Newsday.

54.     In virtually every write-up of the restaurant, the only owner of the business that was referenced was Plaintiff Maher, identified as chef and owner.

55.     There is no question that the public and local consumers identify the EAT, EAT Gastropub marks and the EAT Gastropub Restaurant as belonging to and associated with John Maher.

56.     Upon information and belief, the Corporation is presently worth in excess of $1.4 million and stands to greatly increase in value over the next year.

### _Defendants' Attempt to Expel  Plaintiff Maher from the Corporation and the Restaurant Operations_

57.     Despite the initial success of the EAT Gastropub Restaurant, Plaintiff Maher was concerned by the business practices of Defendants Conforti and Russell and raised those concerns with them.

58.     Upon information and belief, the individual Defendants have engaged in corporate waste and mismanagement, including siphoning funds from the corporation for their own personal purposes and benefit.

59.     Upon information and belief, due to the actions of Defendants Conforti and Russell, the corporation has significant legal exposure.

60.     On or about March 10, 2015, there was a team meeting at the Restaurant. A waitress complained that Plaintiff Maher yelled at her whenever she made a mistake. Defendant Conforti said he would investigate the matter but he did not discuss it with Plaintiff Maher, nor was Plaintiff Maher ever given written warnings regarding any misconduct.

61.     On Friday, March 27, 2015, a meeting of the shareholders of the Corporation was held, and John Fitzsimmons was also present.  At the meeting, Plaintiff Maher was informed that he was suspended for a month with pay.

62.     Later that same day, after Plaintiff Maher had left his Recipe Books and other personalty behind at the Restaurant, Defendant Conforti told Plaintiff Maher that there were "irreconcilable" differences and that he had informed the staff that Plaintiff Maher had "moved on."

63.     Upon information and belief, Defendant Conforti conducted a staff meeting that same day, told the kitchen crew that Plaintiff Maher and the rest of the partners had an "amicable split" and Plaintiff Maher had "moved on."

64.     Within two hours of Plaintiff Maher leaving the premises under the mistaken belief that he was suspended with pay, the EAT Gastropub Restaurant was locked and all passwords were changed.  Plaintiff Maher was effectively barred any and all entry to the computers or the premises.

65.     These acts by Defendants Conforti, Russell and the Corporation were blatant breaches of the Corporation's Operating Agreement (a written agreement between Plaintiff Maher and Defendants Conforti and Russell) and their oral agreements.

66.     The Operating Agreement specifically provided a procedure that must be followed in the event of a partner's (owner's) or manager's misconduct.  It stated that that

…the other partners may issue a warning to the offending partner by means of a written warning. This warning will specify the nature of the violation, the date or approximate dates of the violation and will be signed by the partners who have issued the warning. Receipt of repeated warning letters may result in the suspension or expulsion of the offending partner or suspension of the manager.  Moreover, locking me out of the business which carried my personal brand and logo defied the very premise of our entire agreement to start a business together.

67.     Plaintiff Maher had never received any letters of misconduct signed by the other partners.

68.     Defendants refused to allow Plaintiff Maher the basic decency of reentering the Restaurant to retrieve his personal belongings.

69.     The Defendants are clearly free riding on the goodwill and reputation that Plaintiff Maher built up so painstakingly over the course of so many years, and are seeking to deny him the return on his the twenty-five years invested in training, learning and developing his skills, and the last ten years developing the EAT Logo and brand.

70.     Left unrestrained, the Defendants herein likely will cause confusion to the customers and tarnishing the brand Plaintiff Maher spent twenty-five years developing. Within a short period of time, Plaintiff Maher could lose everything: his customer base, his brand, his logos, his goodwill, and his reputation.

### ***Demand Futility***

71.     Plaintiff Maher has not made a demand upon the Corporation to bring the derivative claims because such a demand would be futile.

72.     The individual Defendants are effectively in control of the Corporation. The derivative claims are premised upon acts of disloyalty and self-dealing by the individual Defendants.

73.     Accordingly, Plaintiff Maher is excused on principles of futility from making a demand upon the Corporation to bring the derivative claims.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment)

74.     Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

75.     Plaintiff seeks a declaratory judgment from this Court that: (i) Plaintiff Maher is the holder of the trademark on the EAT Logo and EAT Gastropub Logo (and all works derivative therefrom), (ii) Plaintiff effectively licensed to the Defendant Corporation the use of the EAT Logo and EAT Gastropub Logo and his Recipe Books for so long as he was in control of the operations of the Defendant Corporation; and, (iii) accordingly, none of the Defendants in the herein action have any right, title, or interest in or to the EAT Logo, the EAT Gastropub Logo or the Recipe Books, absent a valid license from Plaintiff.

76.     Plaintiff also seeks a declaration that (i) Defendants' attempt to expel him from the Corporation was in violation of the Corporation's own Operating Agreement and the applicable laws of the State of New York, and thus was ineffective, and (ii) accordingly, Plaintiff was and is still a 33% shareholder of the Corporation.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

77.     Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

78.     The Operating Agreement signed by the parties constitutes a contract between and among them.

79.     Plaintiff satisfied all of his obligations under the contract.

80.     Defendants have failed to satisfy their contractual obligations to Plaintiff and have breached the Operating Agreement.

81.     Plaintiff has been damaged as a direct result of Defendants' breach and is entitled to recover compensatory damages in an amount to be determined at trial but believed to exceed $1 million.

82.     Defendants' breach of the contract shall cause Plaintiff irreparable harm which cannot be adequately calculated or compensated solely by monetary damages, including an irreversible dilution of the EAT Logo, such that a final judgment will be ineffectual if immediate injunctive relief is not granted to the Plaintiff.

### THIRD CAUSE OF ACTION
### (False Designation of Origin in Violation of 15 U.S.C. § 1125(a))

83.     Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

84.     Plaintiff successfully worked within the local community for 25 years and in so doing built up name recognition and goodwill associated with Plaintiff's name and the EAT Logo and brand name.

85.     Consumers identify the EAT Logo and the EAT Gastropub Logo with Plaintiff Maher.

86.     The goods and services which are associated with the EAT Logo and the EAT Gastropub Logo originated with the Plaintiff.

87.     The Defendants are now holding themselves as being the originators of the goods and services associated with the EAT Gastropub Logo and Plaintiff's brand.

88.     This false designation of origin is likely to cause consumer confusion.

89.     Allowing Defendants to expel Plaintiff from the Corporation and the operations of the Restaurant, while continuing to use the EAT Gastropub Logo and brand will cause confusion to customers and will cause dilution of the EAT trademark and brand name.

90.     Plaintiff has been and continues to be damaged by Defendants' activities and conduct.

91.     Defendants' acts constitute false designation in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) and the common law. As such, Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116, 1118.

92.     Additionally, Plaintiff  is entitled to recover its damages, Defendants' profits, received as a result of Defendants' conduct, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

93.     As a result of the Defendants' conduct toward Plaintiff, Plaintiff has suffered and will continue to suffer irreparable harm which cannot be adequately calculated or compensated solely by monetary damages, including an irreversible dilution of the EAT Brand name, such that a final judgment will be ineffectual if immediate injunctive relief is not granted to the Plaintiff.

### FOURTH CAUSE OF ACTION
**(Trademark Infringement in Violation of 15 U.S.C. § 1114)**

94.     Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

95. Plaintiff designed an attractive logo for the EAT brand name and over time it developed secondary meaning. As such, the EAT Logo is a protectable mark owned by Plaintiff.

96. Plaintiff designed an attractive logo for the EAT brand name to use in the EAT Gastropub Restaurant and over time it has developed secondary meaning. As such, the EAT Gastropub Logo is a protectable mark owned by Plaintiff.

97.     Plaintiff designed and controlled the use of the EAT Logo and the EAT Gastropub Logo in connection with the EAT Gastropub Restaurant's business.

98.     Plaintiff's license of the use of the EAT Logo or the EAT Gastropub Logo for use by the Corporation was contingent upon Plaintiff's continued control of the operations of the Restaurant and protection of the brand name and reputation.

99.     Since effectively expelling Plaintiff from the operations of the Corporation and the Restaurant, Defendants have continued to use in commerce, without the Plaintiff's consent, the EAT Gastropub Logo and brand which remains associated with the Plaintiff's goodwill and reputation as a chef.

100.     Defendants' continued use of the EAT Gastropub Logo is likely to cause confusion or mistake or deceive consumers as to the affiliation, connections, or association between the Plaintiff and the Defendants.

101.     Plaintiff has been and continues to be damaged by Defendants' activities and conduct. Defendants' acts constitute an infringement of Plaintiff's trademarks and logos in violation of the Lanham Act, 15 U.S.C. § 1114, and the common law. As such, Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116, 1118.

102.     Plaintiffs has suffered and will continue to suffer monetary damages by Defendants' infringement, in an amount to be determined at trial, and in the amount established by 15 U.S.C. § 1114, along with costs and attorneys fees.

103.    As a result of Defendants' conduct toward Plaintiff, the Plaintiff has suffered and will continue to suffer irreparable harm which cannot be adequately calculated or compensated solely by monetary damages, including an irreversible dilution of the EAT Logo and trademark, such that a final judgment will be ineffectual if immediate injunctive relief is not granted to the Plaintiff.

## FIFTH CAUSE OF ACTION
### (Copyright Infringement in Violation of 17 U.S.C. § 501)

104.    Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

105.    Over a 25 year period as a chef, Plaintiff developed his own unique recipes and a manner of displaying those recipes in his Recipe Books.

106.    Those Recipe Books are copyrightable compilations and are owned by Plaintiff.

107.    After effectively expelling Plaintiff from the operations of the Corporation and the Restaurant, Defendants have continued to use Plaintiffs' Recipe Books, and have failed and refused to return those Recipe Books, and all copies thereof, to Plaintiff.

108.    Additionally, upon information and belief, Defendants have copied, shared, or sold these recipes, or will imminently copy, share, and sell these recipes.

109.    Plaintiff has been harmed by Defendants' continued use of Plaintiff's Recipe Books.

110.    Defendants' acts constitute copyright infringement under of 17 U.S.C. § 501.

111.    Plaintiff is entitled to recover damages, which include his actual losses and any and all profits that Defendants have made as a result of their infringing conduct, under 17 U.S.C. § 504. Alternatively, Plaintiff is entitled to statutory damages under 17 U.S.C. § 504(c).

112.    Upon information and belief, Defendants' actions are willful and therefore the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2). Moreover, as Defendants' actions were willful, an award of attorney's fees should be awarded to Plaintiff in accordance with 17 U.S.C. § 505.

113.    Additionally, Plaintiff will continue to be damaged by Defendants' activities in a manner that may not be completed or adequately compensated by monetary damages, and therefore is entitled to injunctive relief pursuant to 17 U.S.C. § 502.

### SIXTH CAUSE OF ACTION
#### (Conversion)

114.    Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

115.    Plaintiff relies upon his cooking utensils, Recipe Books, good will and the Eat Logo and trademark to make a living.

116.    Defendants have failed and refused to return to Plaintiff his cooking utensils, Recipe Books and other personality left at the Restaurant, and have converted these items and Plaintiff's good will and Eat Logo, trademarks and brand name to their own use.

117.    Upon information and belief, Defendants have misappropriated content from the Recipe Books that Plaintiff developed and which are the rightful property of Plaintiffs.

118.    Plaintiff has suffered and will continue to suffer monetary damages by Defendants' conversion, in an amount to be determined at trial, and in the amount established by 15 U.S.C. § 1117, along with costs and attorneys fees.

119.    Punitive damages should be added to any award of compensatory damages as a result of the willful and wanton nature of Defendants' actions.

120.    As a result of Defendants' conduct toward Plaintiff, Plaintiff has suffered and will continue to suffer irreparable harm which cannot be adequately calculated or compensated solely by monetary damages, including irreversible dilution of the Eat Brand name, such that a final judgment will be ineffectual if immediate injunctive relief is not granted to the Plaintiff.

**SEVENTH CAUSE OF ACTION**
**(Unjust Enrichment)**

121.    Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

122.    Plaintiff was the driving force behind the creation of the business of the Corporation and the Eat Gastropub Restaurant.

123.    Plaintiff worked tirelessly for years developing the recipes, Recipe Books, concepts and business methods by which the Corporation and the Restaurant would be run.

124.    Plaintiff worked tirelessly for years building the good will of his name and the EAT mark

125.    By removing Plaintiff from control of the Corporation and Restaurant after only five months of operation, and continuing to use the fruits of Plaintiff's labor, Defendants have unjustly enriched themselves at Plaintiff's expense.

126.    Defendants have improperly misappropriated and retained revenue and profits that rightfully belong to Plaintiff.

127.   Defendants have obtained substantial benefits by misappropriating and retaining Plaintiff's property, the fruits of his labor, and the revenue and profits that rightfully belong to Plaintiff.  These substantial benefits were derived at the expense of Plaintiff.

128.   Defendants have not compensated Plaintiff for the full benefits they received from Plaintiff's labor and his contribution to building the Corporation and the Restaurant.

129.   Allowing Defendants to retain the benefits of this improper behavior would be inequitable and would result in Defendants' unjust enrichment at the expense of Plaintiff.

130.   Defendants have thus been unjustly enriched at the expense of Plaintiff, and equity and good conscience require that Plaintiff is entitled to recover against Defendants in an amount to be determined at trial.

131.   Punitive damages should be added to any award of compensatory damages as a result of the willful and wanton nature of Defendants' actions

132.   As a result of Defendants' conduct toward Plaintiff, Plaintiff has suffered and will continue to suffer irreparable harm which cannot be adequately calculated or compensated solely by monetary damages, including irreversible dilution of the EAT mark, such that a final judgment will be ineffectual if immediate injunctive relief is not granted to the Plaintiff.

## EIGHTH CAUSE OF ACTION
## <u>DERIVATIVELY AGAINST DEFENDANTS CONFORTI AND RUSSELL</u>
### (Unjust Enrichment/Money Had and Received)

133.   Plaintiff hereby repeats and realleges all of the allegations made in the previous paragraphs as if fully set forth at length herein.

134.     Defendants Conforti and Russell have diverted and continue to divert to themselves substantial amounts of monies that were properly payable, and belonged, to the Corporation.

135.     Upon information and belief, these diverted monies include large amounts of cash paid to the Corporation at the Restaurant by customers on a daily basis.

136.     Upon information and belief, Defendants Russell and Conforti did so without the authority of and to the exclusion of the Corporation.

137.     Defendants Conforti and Russell have obtained such substantial amounts of monies at the expense of the Companies.

138.     Defendants Conforti and Russell have not compensated the Companies for the substantial amounts of monies that they have improperly converted.

139.     Allowing Defendants Conforti and Russell to retain the amounts of monies would be inequitable and would result in Defendants' Conforti and Russell's unjust enrichment.

140.     Equity and good conscience requires that the Corporation is entitled to recover against Defendants Conforti and Russell in an amount to be determined at trial.

141.     The Corporation continues to suffer damages as a result of Defendants Conforti's and Russell's continuing conduct which, if not enjoined, shall cause irreparable, unquantifiable damages to the Corporation.

142.     At all times relevant hereto, Defendants Conforti and Russell acted with gross negligence, reckless disregard of the Corporation's rights and with malice and oppression in their actions, entitling the Companies to an award of punitive damages in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**<u>DERIVATIVELY AGAINST DEFENDANTS CONFORTI AND RUSSELL</u>**
**(Breach of Fiduciary Duties as Officer of the Corporation)**

143.     Plaintiff hereby repeats and realleges all of the allegations made in the previous paragraphs as if fully set forth at length herein.

144.     Defendants Conforti and Russell owed duties as a fiduciary to the Corporation by virtue of their position of trust and authority as officers of the Corporation.

145.     Defendants Conforti and Russell sought and achieved the trust of Plaintiff Maher, in exchange for the Plaintiff's investment of substantial funds, time, investment and use of Plaintiff's EAT mark and good will, and were obligated to act in the Corporation's best interests.

146.     The very nature of the relationship between the Corporation and Defendants Conforti and Russell imposed a duty upon them to act in the Corporation's interest, even if such actions were to the detriment of Defendants Conforti and Russell themselves.

147.     By virtue of Defendants' intentional harmful actions, as stated above, in, *inter alia*, selfishly excluding Plaintiff from the operations of the Corporation and Restaurant and misappropriating property and funds from the Corporation, Defendants Conforti and Russell breached their fiduciary duty to the Corporation.

148.     Upon information and belief, Defendants Conforti and Russell have benefited themselves at the Corporation's expense.

149.     The Corporations continue to suffer damages as a result of Defendant Conforti and Defendant Russell's continuing conduct which, if not enjoined, shall cause irreparable, unquantifiable damages to the Corporation.

150.     On behalf of the Corporation, Plaintiff accordingly seeks monetary damages in an amount to be determined at trial, and injunctive relief.

151.     At all times relevant hereto, Defendants Conforti and Russell acted with gross negligence, reckless disregard of the Corporation's rights and with malice and oppression in their actions, entitling the Corporation to punitive damages in an amount to be determined at trial.

### TENTH CAUSE OF ACTION
### DERIVATIVELY AGAINST DEFENDANTS CONFORTI AND RUSSELL
**(Accounting and Appointment of Receiver pursuant to BCL § 1113)**

152.     Plaintiff hereby repeats and realleges all of the allegations made in the previous paragraphs as if fully set forth at length herein.

153.     The Corporation continues to suffer damages as a result of the continuing conduct of Defendants Conforti and Russell.

154.     By reason of the foregoing, Defendants Conforti and Russell must be directed to account to the Corporation for the entire business and profit that they have made, as well as for any assets of the Corporation that they have diverted to themselves.

155.     By reason of the foregoing, the Court should appoint a receiver over the affairs of the Corporation.

156.     The Companies have no adequate remedy at law.

### ELEVENTH CAUSE OF ACTION
**(Judicial Dissolution of the Corporation pursuant to BCL § 1104-a)**

157.     Plaintiff hereby repeats and realleges all of the allegations made in the previous paragraphs as if fully set forth at length herein.

158.    Plaintiff Maher is a 33% owner of the Corporation, which is a closely held corporation.

159.    According to the Corporation's operating agreement, each of the owners was also expected to perform certain duties and have certain responsibilities.

160.    According to the Corporation's operating agreement, Plaintiff Maher had a reasonable expectation that he would be in control of the operations and quality of the Restaurant and its customer service.

161.    The Defendants' actions toward Plaintiff are "oppressive" pursuant to BLC § 1104-a.

162.    As a result of the attempt by Defendants Conforti and Russell to expel Plaintiff Maher from the Corporation, there is absolute deadlock and strong disagreement between Plaintiff and the Defendants.

163.    Due to the oppression of Plaintiff Maher, and the other acts by Defendants Conforti and Russell in breach of their fiduciary obligations (including diverting the Corporation's assets to themselves), it is not reasonably practicable to carry on the business of the Corporation in conformity with the New York Business Corporations Law.

164.    The Corporation cannot continue to conduct business without the active participation and cooperation of Plaintiff, who has been effectively locked out of the operations of the Corporation and Restaurant.

165.    The dispute between the owners of this closely held Corporation is now so hopelessly beyond resolve that it is neither practical nor possible to resume the business of the Corporation as a joint venture between Plaintiff Maher and Defendants Conforti and Russell.

166.     It is beneficial to the interests of the owners of the Corporation that the Corporation be dissolved and their assets be paid out and distributed to their creditors and owners.

167.     This application is authorized under Section 1104-a of the Business Corporations Law of the State of New York.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment as follows:

1.     Awarding compensatory damages in an amount to be determined at trial, but believed to be in excess of $1 million dollars;

2.     Awarding statutory damages in an amount to be determined at trial, but believed to be in excess of $1 million dollars;

3.     Awarding punitive damages in an amount to be determined after trial, but believed to be in excess of $5 million dollars;

4.     Declaring that: (i) Plaintiff Maher is the holder of the EAT Logo and EAT Gastropub Logo and the owner of the Recipe Books (and all works derivative therefrom), (ii) Plaintiff effectively licensed to the Defendant Corporation the use of the EAT Logo and EAT Gastropub Logo and the Recipe Books for so long as he was in control of the operations of the Defendant Corporation; and, (iii) accordingly, none of the Defendants in the herein action have any right, title, or interest in or to the EAT Logo and EAT Gastropub Logo and the Recipe Books absent a valid license from Plaintiff.

5.     Declaring that (i) Defendants' attempt to expel Plaintiff from the Corporation was in violation of the Corporation's own Operating Agreement and the applicable

laws of the State of New York, and thus was ineffective, and (ii) accordingly, Plaintiff was and is still a 33% shareholder of the Corporation.

6.     Ordering that Defendants (and others) are permanently enjoined and restrained from:

a)   converting the Plaintiff's property and assets by, *inter alia*, (i) Infringing on the Plaintiff's trademarks ("EAT" and "EAT Gastropub") by utilizing the trademarks and logos owned by Plaintiff (the EAT Logo and the EAT Gastropub Logo) (or any marks derivative thereof), (ii) infringing on Plaintiff's copyrighted material by utilizing Plaintiff's Recipe Books; or (iii) retaining or using Plaintiff's Recipe Books, recipes, cooking utensils or other personalty;

b)   Engaging in any corporate waste or mismanagement, including failing to account for or otherwise diverting any funds of the Corporation;

c)   Operating the Corporation without the supervision and oversight of a Court-appointed receiver; and

d)   Failing and refusing to provide a full accounting of the Corporation's books and records to Plaintiff and the Court-appointed receiver;

7.     Awarding compensatory damages in favor of the Corporation in an amount to be determined at trial against Defendants Conforti and Russell;

8.     Awarding punitive damages in favor of the Corporation in an amount to be determined at trial against Defendants Conforti and Russell;

9.     Requiring an accounting to the Corporation and Plaintff by Defendants Conforti and Russell;

           10.    Appointing a receiver over the operations and dissolution of the

Corporation;

           11.    Granting a judicial dissolution of the Companies;

           12.    Granting pre-judgment and post-judgment interest and an award of costs

and fees; and

           13.    Granting such other relief as this Honorable Court deems just and proper.

Dated: Brooklyn, New York
      April 7, 2014

                        Respectfully submitted,

                        MCSHAPIRO LAW GROUP P.C.

                        By: _____
                             Chaya Gourarie
                             Jacob Nemon
                             Mitchell C. Shapiro
                        15 Cutter Mill Road, #207
                        Great Neck, New York 11021
                        T: (212) 444-9974
                        F: (212) 901-0921
                        *Attorneys for Plaintiff John Maher*

## VERIFICATION

STATE OF NEW YORK    )
                         ) SS:
COUNTY OF NASSAU    )

JOHN MAHER, being duly sworn, deposes and says:

I am the Plaintiffs in the within action and one of the three shareholders of Defendant DUCK FAT INC. D/B/A EAT GASTROPUB. I have read the within Verified Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true, under the penalties of perjury.

JOHN MAHER

Affirmed before me this
7th day of April, 2015

Notary Public

CHAYA GOURARIE
NOTARY PUBLIC-STATE OF NEW YORK
No. 02GO6287819
Qualified in Kings County
My Commission Expires August 19, 2017